Ellim **DE JESUS RENTAS**, et al Plaintiffs

v.

**BAXTER PHARMACY SERVICES CORP., et al Defendants**

**No. CIV. 01–2096(SEC).**

United States District Court, D. Puerto Rico.

Oct. 7, 2003.

Carlos R. Ramírez, Esq., San Juan, PR, for Plaintiffs.

Juan C. Pérez–Otero and José A. Silva–Cofresí, Fiddler, González & Rodríguez, San Juan, PR, for Defendants.

## OPINION AND ORDER

CASELLAS, District Judge.

Pending before the Court is Defendants' motion for Summary Judgment (Docket # 29). Plaintiffs' have duly opposed Defendants' motion and have also filed a cross motion for summary judgment (Docket # 40). After carefully examining the parties' arguments and the applicable law, Defendants' motion will be **GRANTED** and Plaintiffs' cross motion will be **DENIED**.

### Factual Background

The complaint in the instant case was filed on August 16, 2001 (Docket # 1). Plaintiffs Eillim De Jesus–Rentas, Magdalena Mercado–Casiano, Nidia S. Gomez–Torres, Myrna Piñero–Medina, and Melba

Rocafort–Garcia request that, pursuant to the provisions of the Fair Labor Standard Act (FLSA), as amended, 29 U.S.C. § 201 *et seq.*, and Puerto Rico's overtime provisions contained in 29 P.R. Laws Ann. § 271 *et seq.*, declaratory judgment be entered to the effect that they are entitled to overtime pay under the FLSA. Plaintiffs also request an award for unpaid overtime compensation, liquidated damages, equitable relief, and pre and post-judgment interest, costs, expenses and attorney's fees.

**Motion for Summary Judgment Standard**

Fed.R.Civ.P. 56(b) provides that: "A party against whom a claim … is asserted … may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part [of the claims asserted against him/her]." The Court may grant the movant's motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *NASCO, Inc. v. Public Storage, Inc.*, 29 F.3d 28 (1st Cir.1994). "The principal judicial inquiry required by Rule 56 is whether a genuine issue of material fact exists." 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 3d* § 2725, p. 401.

In this regard, the First Circuit Court of Appeals has noted that for a dispute to be "genuine," there must be sufficient evidence to permit a reasonable trier of fact to resolve the issue in favor of the non-moving party. *U.S. v. One Parcel of Real Property*, 960 F.2d 200, 204 (1st Cir.1992); *See also Boston Athletic Assn. v. Sullivan*,

867 F.2d 22, 24 (1st Cir.1989); *Medina Muñoz v. R.J. Reynolds Tobacco*, 896 F.2d 5, 8 (1st Cir.1990) ("A 'genuine' issue is one that must be decided at trial because the evidence, viewed in the light most favorable to the non-movant, would permit a rational fact finder to resolve the issue in favor of either party.") (citations omitted).

By like token, "material" means that the fact is one that might affect the outcome of the suit under the governing law. *Morris v. Government Development Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir. 1994). "A fact is material if it tends to resolve any of the issues that have been properly raised by the parties." Wright, Miller & Kane, *supra*, § 2725 at p. 419. "Not every genuine factual conflict necessitates a trial. It is only when a disputed fact has the potential to change the outcome of the suit under the governing law if found favorably to the non-movant that the materiality hurdle is cleared." *Martinez v. Colón*, 54 F.3d 980, 983–984 (1st Cir. 1995).

In addition, when determining whether to grant summary judgment, the Court may not weigh the evidence. *Casas Office Machines, Inc. v. Mita Copystar America, Inc.*, 42 F.3d 668 (1st Cir.1994). Summary judgment "admits of no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails." *Id. citing Greenburg v. Puerto Rico Maritime Shipping Authority*, 835 F.2d 932, 936 (1st Cir.1987). Accordingly, if the facts permit more than one reasonable inference, the court on summary judgment may not adopt the inference least favorable to the non-moving party. *Casas Office Machines*, 42 F.3d at 684.

While the moving party has the burden of initially establishing that there is "an absence of evidence to support the non-moving party's case," *Maldonado–Denis v.*

*Castillo–Rodríguez,* 23 F.3d 576, 581 (1st Cir.1994); **the non-movant has a "corresponding obligation to offer the court more than steamy rhetoric and bare conclusions."** *Lawton v. State Mutual Life Assurance Company of America,* 101 F.3d 218, 223 (1st Cir.1996). Furthermore, "the non-movant must produce specific facts, in suitable evidentiary form sufficient to limn a trial worthy issue ... Failure to do so allows the summary judgment engine to operate at full throttle." *Id.; see also Kelly v. United States,* 924 F.2d 355, 358 (1st Cir.1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence."); *Medina Muñoz,* 896 F.2d at 8, *quoting Mack v. Great Atlantic and Pacific Tea Co.,* 871 F.2d 179, 181 (1st Cir.1989) ("The evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a fact finder must resolve.")

**Applicable Law and Analysis**

In the present case, Defendants argue they are entitled to judgment as a matter of law because Plaintiffs are exempt from the FLSA's provisions inasmuch as their work meets the short test for the professional exemption. On the other hand, Plaintiffs argue that Defendants have developed a statement of uncontested facts that, in part, is not sustained by the evidence attached thereto and/or that is contested by Defendants' own official documents and admissions. Furthermore, they allege that Defendants omit facts which prove and support the conclusion that Plaintiffs are entitled to overtime pay because in performing their work they do not perform work that requires the consistent exercise of discretion and judgment.

Congress enacted the FLSA in 1938 as a remedial statute because the free market failed to adequately protect workers from exploitive conditions. 29 U.S.C. § 202(b). The FLSA's minimum wage and overtime provisions aim to protect low-end wage earners in particular from substandard wages and excessive hours. The expressed intent of the FLSA is to eliminate "labor conditions detrimental to the minimum standard of living necessary for the health, efficiency, and general well-being of workers."29 U.S.C. § . 202(a); S.Rep. No. 75–884, at 3–4 (1937); *Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 706–707 n. 18, 65 S.Ct. 895, 89 L.Ed. 1296 (1945).

As a general rule, the Fair Labor Standards Act establishes that employees must be compensated at a rate not less than one and one-half times their regular rate for all overtime hours. 29 U.S.C. § 207(a)(1). The Act further defines overtime as employment in excess of 40 hours in a single workweek. Nevertheless, FLSA's overtime provision does "not apply to any employee employed in a bona fide executive, administrative, or professional capacity.... (as such terms are defined and delimited from time to time by regulations of the Secretary)." 29 U.S.C. § 213(a)(1). The employer in an FLSA case bears the burden of establishing that its employees are exempt; because of the remedial nature of the FLSA, exemptions are to be "narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit." ·*See Reich v. Newspapers of New England,* 44 F.3d 1060, 1070 (1st Cir.1995); *Arnold v. Ben Kanowsky, Inc.,* 361 U.S. 388, 392, 80 S.Ct. 453, 4 L.Ed.2d 393 (1960); *Secretary of Labor v. DeSisto,* 929 F.2d 789, 797 (1st Cir.1991) (citations omitted).

■ Congress did not set forth the specific parameters of the FLSA's exemptions in the statute. They are part of the Department of Labor's (DOL) regulations and interpretations. Promulgated pursuant to an express delegation of Congress, the DOL's regulations are to be given controlling weight unless found to be arbitrary, capricious, or contrary to the statute. *Chevron U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). The DOL's interpretive regulations set forth the Secretary's official position on how they should be applied in specific contexts[1]. *See Newspapers of New England,* 44 F.3d at 1070. Even so, these interpretations have the "power to persuade, if lacking power to control," as they "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944).

The DOL's regulations outline both a short and a long test for determining whether an employee qualifies for an exemption. The requirements of the administrative exemption are set forth in the regulations at 29 C.F.R. § 541.2; the ones for the professional exemption are detailed in 29 C.F.R. § 541.315(a). The short test is used for employees "who are compensated on a salary or fee basis at a rate of at least $285 per week exclusive of board, lodging, or other facilities." 29 C.F.R. § 541.315(a) and 29 C.F.R. § 541.2(e)(2). In the present case, Defendants allege that Plaintiffs fall within the exception outlined in the short test. Therefore, the Court will proceed to analyze Plaintiffs' circumstances to determine if they fall within this exception.

■ In order for the employer to establish that plaintiffs are exempted from the overtime provisions of the FLSA, it must be proved that (1) plaintiffs were paid on a fixed salary basis at a rate of more than $285.00 per week; (2) their primary duty consisted of work knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study; and, (3) their work require the consistent exercise of discretion and judgment. 29 C.F.R. § 541.3(e). *Hashop v. Rockwell Space Operations Company,* 867 F.Supp. 1287, 1294–95 (S.D.Tex.1994).

In the instant case, it has been uncontested that Plaintiffs' fall within the first step of the test, since they were paid on a fixed salary basis at a rate of more than $285.00 per week. Accordingly, Plaintiffs clearly meet the salary basis prong of the short test for the professional exemption and, therefore, the Court needs not enter into any further analysis. However, moving on to the second step of the test, which requires that the primary duty of the employee consists of work based on knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study, the Court believes that said element must be analyzed in conjunction with the third step of the test, which requires that their work duty entail a certain degree of exercise of discretion and judgment.

Plaintiffs base their argument on the fact that in performing their work they must adhere to the specific, well-defined parameters established in Defendant's Standard Operating Procedures (SOP) and therefore do not consistently exercise discretion and judgment. However, Plaintiffs fail to observe that, the FLSA's

---

**1.** It is noteworthy that the Secretary of Labor has expressly classified pharmacists as exempt employees under FLSA. 29 C.F.R. § 541.300–301.

discretion and judgment requirements do not imply an absolute exercise of power. If that were the case, almost no one could be considered a professional employee. In this respect, the Seventh Circuit has recognized "... the reality that many individuals who exercise discretion and independent judgment often do so after consultation with others. Consultation implies an exchange of views or a request for advice; it does not mean an abdication of an individual's own discretion or independent judgment. Consulting with others supplements the information an individual has in order to reach a final judgment." *Piscione v. Ernst & Young, L.L.P.*, 171 F.3d 527, 536, 537 (7th Cir. 1999).

Professional work is characterized by the application of special knowledge with discretion and judgment and is not purely mechanical or routine work[2]. 29 C.F.R. § 541.305. The professional exemption contained in 29 C.F.R. § 541.3 does not provide an explanation of the meaning of the phrase "consistent exercise of discretion and judgment". For this reason, the courts normally look for guidance to the interpretation of that requirement contained in 29 C.F.R. § 541.207[3] related to

**2.** The learned professions include those that have a recognized status and are based on the acquirement of professional knowledge through a prolonged course of specialized intellectual instruction and study, as distinguished from a general academic education and from an apprenticeship, and from a training in the performance of routine mental, manual, or physical processes. Some of the professions that fall under this category are the following: law, medicine, accounting, teaching, engineering, architecture, graduate nursing, chemists, biologists, physics, and pharmacists. These professions require that the knowledge possessed be of an advanced type, and in a field of science or learning. *See* 29 C.F.R. § 541.300–301

**3.** In its pertinent part, § 541.207 states as follows:

Discretion and independent judgment:
(a) In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered. The term as used in the regulations in subpart A of this part, moreover, implies that the person has the authority or power to make an independent choice, free from immediate direction or supervision and with respect to matters of significance. (Without actually attempting to define the term, courts have given it this meaning in applying it in particular cases. *See, Walling v. Sterling Ice Co.*, 69 F.Supp. 669 (1947), *reversed on other grounds*, 165 F.2d 265 (10th Cir.1947); *See also, Con-*

*nell v. Delaware Aircraft Industries*, 55 A.2d 637 (1947))
(b) The term must be applied in the light of all the facts involved in the particular employment situation in which the question arises. It has been most frequently misunderstood and misapplied by employers and employees in cases involving the following:
(1) Confusion between the exercise of discretion and independent judgment, and the use of skill in applying techniques, procedures, or specific standards; and

(2) misapplication of the term to employees making decisions relating to matters of little consequence.
(c) Distinguished from skills and procedures:
(1) Perhaps the most frequent cause of misapplication of the term "discretion and independent judgment"; is the failure to distinguish it from the use of skill in various respects. An employee who merely applies his knowledge in following prescribed procedures or determining which procedure to follow, or who determines whether specified standards are met or whether an object falls into one or another of a number of definite grades, classes, or other categories, with or without the use of testing or measuring devices, is not exercising discretion and independent judgment within the meaning of Section 541.2. This is true even if there is some leeway in reaching a conclusion, as when an acceptable standard includes a range or a tolerance above or below a specific standard.
(d) Final decisions not necessary.
(1) The term "discretion and independent judgment" as used in the regulations in

the administrative exemption. *See Rutlin v. Prime Succession, Inc.,* 220 F.3d 737, 743 (6th Cir.2000); *Barth,* 125 F.Supp.2d at 442.

The regulations state that although determining the "primary duty" of an employee depends on "all the facts in a particular case," "a good rule of thumb [isl]that primary duty means the major part, or over 50 percent, of the employee's time." However, although the amount of time an employee spends in the performance of particular tasks is a useful guide to determining that employee's primary duty, *see* 29 C.F.R. § 541.103, "courts evaluate whether an employee's responsibilities constitute his primary duty based on the importance of the duties, the frequency with which they require the employee to exercise discretion, and the relative freedom of the employee from supervision, as well as the percentage of time the employee spends performing them." *Piscione,* 171 F.3d at 545; *Rutlin,* 220 F.3d at 742 (in this case the collateral tasks took up more time than his primary duties). An employee's "primary duty" will usually be what he or she does that is of principal value to employer, not collateral tasks that he or she may also perform, even if they consume more than half of his or her time. Fair Labor Standards Act of 1938, § 13(a)(1), 29 U.S.C.A. § 213(a)(1); 29 C.F.R. § 541.3(e), 541.103. *Bohn v. Park City Group. Inc.,* 94 F.3d 1457 (10th Cir. 1996)

The Court agrees with Defendant position and notes that, as compounding pharmacists, Plaintiffs' primary duties consist of performance work "requiring knowledge of an advanced type in a field of science or learning"; and that their "work required the consistent exercise of discretion and judgment." *Rutlin,* 220 F.3d at 741 (6th Cir.2000). It is undisputed that pharmacists can be classified as professionals who fulfill the "advance knowledge" requirement of the test since in this case, for example, in order to become a pharmacist, all of the Plaintiffs studied several years at the University of Puerto Rico (from 5 to 10 years), completed a comprehensive residency program, passed the State Bar examination, and even participate in mandatory continuous education programs.

Turning to the third prong of the short test for determining whether the Plaintiffs are exempt professionals, we must consider whether their job required that they exercise discretion and judgment. We must keep in mind that, for the short test in the professional exemption, the regulations do not require that the judgment be "independent" as it does on the executive and administrator test. Nor the discretion should be regular and customarily; the DOL's test is met with a lesser standard: "consistently". *Newspapers of New England,* 44 F.3d at 1070; *Skidmore,* 323 U.S. 134, 65 S.Ct. 161.

Although there is no bright line to distinguish whether an employee exercises sufficient discretion and judgment to be considered an exempt employee under the short test for professional, some courts have shed some light in this matter. The

Subpart A of this part does not necessarily imply that the decisions made by the employee must have a finality that goes with unlimited authority and a complete absence of review. The decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action. The fact that an employee's decision may be subject to review and that upon occasion the decisions are revised or reversed after review does not mean that the employee is not exercising discretion and independent judgment within the meaning of the regulations in Subpart A of this part.

Tenth Circuit has ruled that game wardens exercised discretion and judgment because they have almost no supervision, manage their own time each day, and make their independent analysis of wildlife populations and their needs. *See Reich v. State of Wyo.*, 993 F.2d 739 (10th Cir. 1993). Similarly, the Fifth Circuit found that athletic trainers met this requirement because they determined if an athlete could continue playing after an injury, assessed the nature of the injury, and communicated with parents and coaches, among other things. *See Owsley v. San Antonio Independent School*, 187 F.3d 521, 525–527 (5th Cir.1999). Moreover, in *Owsley*, the Court of Appeals ruled that while many of the trainers' duties were limited to actions within the "standard treatment guidelines," such act, by itself, does not indicate lack of professional discretion and judgment. The Court went on to state that "the existence of standard procedures and guidelines does not mean that the trainers' responsibilities do not require the type of consistent exercise of independent discretion and judgment..." *Id.* In *Rutlin*, 220 F.3d 737, the Sixth Circuit rejected an argument that embalming is "routine and contained within well-defined parameters and that the techniques of embalming have changed very little over the past thirty years." In *Rutlin*, the Sixth Circuit concluded that the plaintiff exercised discretion and independent judgment in performing his duties (supervising and coordinating the removal of bodies from residences, hospitals, and nursing homes; organizing, directing, and supervising funerals; performing embalming procedures, adjusting those procedures to the condition of the deceased; and counseling families). *Rutlin*, 220 F.3d at 742. Finally in *Paul v. Petroleum Equipment Tools Co.*, 708 F.2d 168, 171 (5th Cir.1983), the Fifth Circuit agreed with the District Court that pilots exercised discretion and judgment because they "...made the final decision of whether or not to fly and they chose the safest and most efficient route. They added that pilots are consistently exposed to periods wherein at any moment they might be required to make an instant judgment, drawing on knowledge acquired through flight training". *Id.*

It has been uncontested that in performing their work as pharmacists in Baxter, Plaintiffs must adhere to the procedures set forth in the SOP. However, the Court cannot conceive that said mechanisms and responsibilities can be construed as a lack of discretion and judgment in the work of Plaintiffs. Furthermore, the fact that all of the Plaintiffs admitted that they can refuse to process or manufacture medications that could cause harm to a patient according to their judgment and the lack of Plaintiffs' evidence that rebuts this, adds to the Court's conclusion. Therefore, we find that even though when performing their duties Plaintiffs may be making reference or abiding by Defendant's S.O.P., they are performing their duties in a responsible manner, applying their specialized knowledge and exercising their independent criteria using professional judgment.

**Conclusion**

For the reasons set herein, Defendant's motion is **GRANTED** and Plaintiffs' claim will be **DISMISSED WITH PREJUDICE.**

**SO ORDERED.**