# United States Court of Appeals
## For the First Circuit

No. 03-2679

EILLIM DE JESÚS-RENTAS; MAGDALENA MERCADO-CASIANO;
NIDIA S. GÓMEZ-TORRES; MYRNA PIÑERO-MEDINA;
MELBA ROCAFORT-GARCÍA,

Plaintiffs, Appellants,

v.

BAXTER PHARMACY SERVICES CORPORATION;
BAXTER HEALTHCARE CORPORATION;
BAXTER SALES AND DISTRIBUTION CORP.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Salvador E. Casellas, U.S. District Judge]

Before

Lynch, Circuit Judge,

Stahl, Senior Circuit Judge,

and Howard, Circuit Judge.

Carlos R. Ramírez, with whom John F. Nevares & Associates, PSC
was on brief, for appellants.
Pedro J. Manzano-Yates, with whom Juan J. Casillas Ayala and
Fiddler González & Rodríques, LLP were on brief, for appellees.

March 9, 2005

**HOWARD**, **Circuit Judge**.  The Fair Labor Standards Act ("FLSA") requires employers to pay employees overtime for hours worked in excess of 40 hours per week, but it exempts, inter alia, employees working in a bona fide professional capacity.  See 29 U.S.C. § 213(a)(1).  This case requires us to decide whether appellants, compound pharmacists employed by Baxter Pharmacy Services Corporation ("Baxter"), are professionals exempt from the overtime requirement.  The district court determined that they are and awarded Baxter summary judgment on this basis.  We affirm.

Appellants are five licensed compound pharmacists who facilitate Baxter's manufacturing and distribution of intravenous antibiotics, dialysis medication, and chemotherapy drugs.  Their primary duties require them to analyze, approve, and fill prescription requests.

Appellants rotate through three duty stations -- data entry, compounding, and labeling.  At the data entry stage, appellants determine whether a prescription is appropriate for the particular patient based on the nature of the prescription and the patient's medical profile.  At the compounding stage, appellants supervise pharmacy technicians in the preparation of the requested drug compounds.  At the labeling stage, appellants work with technicians to confirm that the final product meets pharmacological standards and that it has been accurately labeled and includes the required documentation.

Appellants are guided in performing their tasks by Baxter's Standard Operating Procedures ("SOPs"). The SOPs combine sources of pharmacological data about the various drugs that Baxter sells. The SOPs also establish the protocols that Baxter employees are expected to follow in performing their duties. Appellants participate annually in updating the SOPs to reflect changing practices and new pharmacological information.

At all times, Baxter paid appellants on a salary basis but did not pay them overtime because Baxter considered them exempt professionals. Appellants filed suit in August 2001 challenging this determination. After discovery, the parties filed cross motions for summary judgment. In a published opinion the district court awarded Baxter summary judgment. See De Jesús Rentas v. Baxter Pharmacy Servs. Corp., 286 F. Supp. 2d 235 (D.P.R. 2003). Applying a test that we shall elaborate momentarily, the court ruled that appellants were exempt professionals because they consistently exercised discretion and judgment in performing their duties. See id. Appellants timely appealed.[1]

We review the award of summary judgment de novo. See Kolling v. Am. Power Conversion Corp., 347 F.3d 11, 13 (1st Cir. 2003). Summary judgment is appropriate only when the undisputed

---

[1]In the district court, appellants also claimed overtime pay under Puerto Rico's overtime law, see 29 P.R. Laws Ann. § 271 et seq., but have not raised arguments relevant to this claim on appeal.

facts demonstrate that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). Cross summary judgment motions do not alter the basic Fed. R. Civ. P. 56 standard. See Wiley v. Am. Greetings Corp., 762 F.2d 139, 140-41 (1st Cir. 1985). Cross motions simply require that we determine whether either party deserves judgment as a matter of law on the summary judgment record. See Wightman v. Springfield Terminal Ry. Co., 100 F.3d 228, 230 (1st Cir. 1996).

The FLSA's overtime provisions establish the general rule that employees must be compensated at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 40 hours. See 29 U.S.C. § 207(a)(1). But employees working in executive, administrative, or professional capacities are exempt from this requirement. See id. at § 213(a)(1). "The employer in an FLSA case bears the burden of establishing that its employees are exempt, and because of the remedial nature of the FLSA, exemptions are to be narrowly construed against the employers seeking to assert them . . ." Reich v. Newspapers of New England, Inc., 44 F.3d 1060, 1070 (1st Cir. 1995) (internal quotation marks omitted).

The terms of the professional exemption are set forth in regulations promulgated by the Secretary of Labor.[2] See id. The

---

[2]The Secretary has adopted new regulations for defining professional employees which became effective in August 2004. See 29 C.F.R. § 541.300 (2004). Because this case predates the

-4-

parties agree that the so-called "short test" applies for determining if appellants qualify as professionals.[3]  Under the short test, a professional means any employee:

>     (a)  Whose  primary  duty  consists  of  the performance of:

>     (1)  Work  requiring  knowledge  of  an advance type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study, as  distinguished  from  a  general  academic education and from an apprenticeship, and from training in the performance of routine mental, manual, or physical processes, . . . and

>     (b) Whose work requires the consistent exercise of discretion and judgment in its performance.

29 C.F.R. § 541.3 (1999).  Appellants concede that they satisfy the knowledge portion of the short test but claim that they are not professionals because their work does not require the consistent exercise of discretion and judgment.  Consequently, we train our focus on this element of the test.

In general, the exercise of discretion and judgment "involves the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.207(a)(1999);

---

change, we apply the prior regulations.  See Belt v. EmCare, Inc., 351 F. Supp. 2d 625 (E.D. Tex. 2005).

[3]The regulations provide that the short test applies to employees compensated at a certain minimum salary.  29 C.F.R. § 541.3(a) (1999).  Appellants concede that they satisfy the salary prerequisite for application of the short test.

Rutlin v. Prime Succession, Inc., 220 F.3d 737, 743 (6th Cir. 2000) (citing 29 U.S.C. § 541.207).[4] Applying this definition to the undisputed evidence convinces us that appellants consistently exercise discretion and judgment.

One of appellants' primary tasks is to evaluate the safety and propriety of each prescription for the particular patient. If appellants believe that a drug is contraindicated for a certain patient, they are responsible for contacting the prescribing physician to discuss whether the prescription needs modification. There is no dispute that the decision to contact the physician and the content of the subsequent conversation is within appellants' control and judgment and requires appellants to use their advanced training. See Anunobi v. Eckerd Corp., No. 02-CV-0820, 2003 WL 22368153, at *5 (W.D. Tex. Oct. 17, 2003) (stating that pharmacist exercised discretion and judgment because, inter alia, he was responsible for contacting physician if drug seemed contraindicated).

As a result of appellants' conversations with the prescribing physicians, the appellants and physicians typically

---

[4]This definition of "discretion and judgment" comes from the regulations for the administrative exemption. Several courts have applied this definition in cases involving the professional exemption. See Rutlin, 220 F.3d at 743; Piscione v. Ernst & Young, LLP, 171 F.3d 527, 535-36 (7th Cir. 1999); Barth v. Wolf Creek Nuclear Operating Corp., 125 F. Supp. 2d 437, 442 (D. Kan. 2000); Debejian v. Atl. Testing Labs, Ltd., 64 F. Supp. 2d 85, 89-90 (N.D.N.Y. 1999).

agree on how to modify the original prescription. If, however, the appellants and physicians reach impasse, the appellants discuss the situation with their colleagues and supervisors before deciding whether to dispense the drug. That appellants consult among themselves and supervisors in difficult cases does not preclude a finding that they exercise discretion and judgment in those cases. See Piscione, 171 F.3d at 536 ("[T]he reality [is] that many individuals who exercise discretion and independent judgment often do so after consultation with others."). In fact, appellants concede in their depositions that their position requires them to use advanced training and judgment in determining if a drug is contraindicated and deciding whether the drug could be dispensed without compromising a patient's health.

Appellants also spend a significant portion of their time supervising other employees. Supervisory responsibility is an indicum that an employee exercises discretion and judgment. See id. at 535 & 537. Appellants each supervise between eight and ten pharmacy technicians during the compounding process and two to three technicians during labeling. Appellants are responsible for assigning work, explaining how tasks should be accomplished, and reviewing the final work product. When the technicians make mistakes, appellants correct the errors. Moreover, Baxter relies on appellants' evaluations in making personnel decisions regarding the technicians. See id. at 537 (stating that employee exercised

-7-

discretion and judgment by assigning work and evaluating subordinates).

Finally, while appellants spend much of their day supervising other employees, they are not closely supervised in the performance of their own duties. This is another indicator that appellants exercise discretion and judgment. Compare Owsley v. San Antonio Indep. Sch. Dist., 187 F.3d 521, 526 (5th Cir. 1999) (stating that athletic trainers exercised discretion and judgment, in part, because they made many decisions without immediate supervision), with Quirk v. Baltimore County, 895 F. Supp. 773, 785 (D. Md. 1995) (holding that emergency medical technician did not consistently exercise discretion and judgment because he worked under the immediate supervision of a physician).

While not disputing any of this, appellants contend that they do not consistently exercise discretion and judgment because they are bound to follow the SOPs in performing their duties. This argument fails. First, appellants acknowledge that they do not follow the SOPs if they believe that the result would endanger a patient's health. Appellants admit that their ultimate duty is to assure patient health, and that they depart from the SOPs, if necessary, to meet this responsibility. Thus, appellants maintain discretion to decide when to depart from the SOPs.[5] See Paul v.

_____

[5]There is no evidence that appellants were ever disciplined for declining to follow an SOP. Cf. Quirk, 895 F. Supp. at 785 (holding that emergency medical technician was not a professional

Petroleum Equip. Tools Co., 708 F.2d 168, 171 (5th Cir. 1983) (concluding that a pilot exercised discretion and judgment because, even though he was guided by an extensive procedural manual, he had discretion to act as appropriate in case of an in-flight emergency).

Second, the SOPs are issued and/or updated by Baxter after consultation with appellants. Appellants review the SOPs and provide suggestions for modification and improvement during the SOP formulation process. The SOPs thus reflect appellants' collective wisdom about how operations at Baxter should be organized and what new pharmacological information should be included. Participation in this review process itself involves judgment and discretionary decisionmaking. Cf. Vela v. Houston, 276 F.3d 659, 676 (5th Cir. 2001) (stating that emergency medical specialists were not professionals, in part, because they did not participate in establishing the protocols and standing orders that guided the performance of their duties).

No circuit court has, to our knowledge, considered whether a pharmacist qualifies as a professional under the FLSA.[6] But we derive support for our conclusion from a decision by the Fifth Circuit classifying athletic trainers as professionals. See

_____

because he was disciplined for deviating from standard protocols).

[6]One unpublished district court opinion holds that pharmacists are exempt professionals under the FLSA. See Anunobi, 2003 WL 22368153.

-9-

<u>Owsley</u>, 187 F.3d at 526-27.  In <u>Owsley</u>, the trainers argued that they were not professionals because their exercise of discretion and judgment was substantially cabined by a series of standard treatment guidelines that they were required to follow.  <u>See</u> <u>id.</u> at 526.  The court rejected this argument.  <u>See</u> <u>id.</u>  It concluded that "[t]he existence of standard procedures and guidelines does not mean that the trainers' responsibilities do not require the type of consistent exercise of discretion and judgment [that is] characteristic of other professionals."  <u>Id.</u> at 527.  The court determined that the trainers exercised independent discretion and judgment because they were not closely supervised in the implementation of the standard procedures and they maintained discretion to depart from the procedures in emergency situations.  <u>See</u> <u>id.</u>

Similarly, the undisputed evidence in this case establishes that appellants consistently exercise discretion and judgment despite the existence of the SOPs.[7]  With little

---

[7]Appellants rely on <u>Hashop</u> v. <u>Rockwell Space Operations Co.</u>, 867 F. Supp. 1287 (S.D. Tex. 1994).  In <u>Hashop</u>, the court considered whether technicians who worked as instructors in training space shuttle ground control personnel were professionals. <u>See</u> <u>id.</u> at 1298.  The court ruled that they were not professionals, in part, because they made decisions "only within a well-defined framework."  <u>Id.</u>  But as we have explained, appellants make decisions outside the SOP framework which are fundamental to Baxter's primary mission of dispensing safe and appropriate drugs. <u>See</u> <u>id.</u> (stating that technicians were not professionals because their decisions did not "affect the fundamental operation of the enterprise").

supervision, appellants use their specialized knowledge to make numerous discretionary decisions including how to follow up with a physician over a questionable prescription; when a drug should not be dispensed because of a potential danger to the patient; and how to assign, supervise, and review the work of the technicians. This evidence establishes that appellants are exempt from the FLSA's overtime requirements.[8]

**Affirmed**.

---

[8]After this litigation began, Baxter sought to hire another compound pharmacist. The advertisement stated that the position was "non-exempt." Appellants argue that this advertisement constituted an admission of liability by Baxter under Federal Rules of Evidence 704 and 801(d)(2), thereby entitling appellants to summary judgment. This argument was not raised before the district court and is therefore forfeited on appeal. See Sandstrom v. ChemLawn Corp., 904 F.2d 83, 87 (1st Cir. 1990). Alternatively, appellants contend that this job posting establishes a disputed fact concerning the proper classification of the compound pharmacist position because it demonstrates that Baxter believed that the position was non-exempt. We disagree. That Baxter may have thought that the compounding pharmacist position was non-exempt is insufficient to overcome the undisputed facts which establish that the position is exempt.