# United States Court of Appeals for the Federal Circuit

2006-1539

DONALD C. HUTCHINS,

Plaintiff-Appellant,

v.

ZOLL MEDICAL CORPORATION,

Defendant-Appellee.


Donald C. Hutchins, of Longmeadow, Massachusetts, pro se.

John C. Englander, Goodwin Procter LLP, of Boston, Massachusetts, for defendant-appellee. With him on the brief was John T. Bennett.

Appealed From: United States District Court for the District of Massachusetts

Judge Michael A. Ponsor

# United States Court of Appeals for the Federal Circuit

2006-1539

DONALD C. HUTCHINS,

Plaintiff-Appellant,

v.

ZOLL MEDICAL CORPORATION,

Defendant-Appellee.

_____

DECIDED: July 3, 2007

_____

Before MICHEL, <u>Chief Judge</u>, NEWMAN and DYK, <u>Circuit Judges</u>.

NEWMAN, <u>Circuit Judge</u>.

This appeal arises from charges of patent and copyright infringement based on a computer-assisted system of administering emergency procedures, primarily cardiopulmonary resuscitation (CPR). Mr. Donald C. Hutchins charged Zoll Medical Corporation with infringement of Hutchins' United States Patent No. 5,913,685 (the '685 patent) entitled "CPR Computer Aiding." Mr. Hutchins also charged Zoll with copyright infringement and with breach of a contract between Hutchins and Zoll. The United States

District Court for the District of Massachusetts granted Zoll's motions for summary judgment of non-infringement on the patent and copyright counts, and that there was no breach of contract.[1] Hutchins appeals the non-infringement rulings and assigns error to various procedural rulings; he also seeks to reopen the case based on charges of fraudulent non-disclosure by Zoll of relevant information.

The grant of summary judgment receives plenary appellate review, reapplying the standard applied by the district court. Thus we review whether there is a genuine issue of material fact, or if there can be but one reasonable verdict. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). To grant a motion for summary judgment there must be no reasonable view of material facts, with cognizance of the substantive evidentiary standards, whereby a reasonable jury could find for the non-movant. Id. at 255; see, e.g., De Jesus-Rentas v. Baxter Pharm. Servs. Corp., 400 F.3d 72, 73-74 (1st Cir. 2005); Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc., 469 F.3d 1005, 1013 (Fed. Cir. 2006).

***Patent Infringement***

Patent infringement requires that every element and limitation in a correctly construed claim is embodied in the accused system either literally or, if embodied by an equivalent, in compliance with the rules of equivalency as set forth in Festo Corp. v. SMC Corp., 535 U.S. 722 (2002) and Warner-Jenkinson Co. v. Hilton Davis Chemical Co., 520 U.S. 17 (1997) and implementing rulings.

The '685 patent describes and claims an interactive computer-directed system for guiding emergency rescue personnel in conducting on-site administration of CPR. The

---

1    Hutchins v. Zoll Medical Corp., 430 F. Supp.2d 24 (D. Mass. 2006).

2006-1539                                          2

system instructs rescue personnel to input certain characteristics of the victim, such as the victim's age and state of consciousness; the system then provides detailed step-by-step procedures to be followed by the rescuer in order to administer CPR and resuscitate the victim. Features of the system described in the '685 patent include automated voice and visual signals and instructions, animated images, and audible speech prompts. Claim 1 is the broadest claim:

> 1. A general purpose computer system adapted for cardiopulmonary resuscitation (CPR) aiding to provide guidance to rescue personnel trained in CPR for resuscitating a victim under an emergency condition, comprising:
>     a computer terminal, including,
>     an output comprising a display and an electroacoustical transducer; and
>     an input comprising an interactive display input, wherein the interactive display unit is adapted for selecting from image or text viewed on the display that is representative at least of characteristics of said victim.

Zoll's accused device, trademarked "AEDPlus®," is a portable computer system and defibrillator that provides automated voice and visual signals and instructions to guide rescue personnel through the steps to administer CPR to the victim and to defibrillate if necessary.

The elements of the '685 patent claims on which the district court relied are "general purpose computer" and "interactive display input." The district court found that neither of these elements is present in the Zoll system, and on this basis granted summary judgment of non-infringement.

**A**

All of the '685 claims require a "general purpose computer system" that is adapted to the specified purposes. The definition of "general purpose computer" was agreed by the parties as

a computer capable of running multiple unrelated programs, which are selected by the user and loaded into the device. It must feature at least: (1) a central processing unit, (2) one or more input devices that are not specific to any one program, (3) memory, (4) mass storage devices (such as a disk drive) for storing large amounts of data, and (5) one or more output devices.

Zoll's device contains a Hitachi SuperH RISC (Reduced Instruction Set Computer) microprocessor. The district court observed that the '685 specification is specific to a general purpose computer and that all of the claims were so limited during prosecution. The court found that it was "implausible" for a RISC microprocessor to be deemed a general purpose computer, for RISC microprocessors have limited functionality. Thus the court held that "general purpose computer," as that term is used in the '685 patent, does not read on a RISC microprocessor and that the Zoll system thereby avoids infringement.

Mr. Hutchins argues that his invention is readily performed using a RISC microprocessor. He points out that the Zoll system is intended to interface and work in conjunction with a standard IBM-PC, which is a general purpose computer, and that the Zoll device includes an interface for connection to a personal computer for purposes of review and archiving of data associated with a rescue; the Zoll manual states the minimum criteria for the personal computer as "Windows . . . IBM-compatible 486 (or higher) computer, 64 MB RAM, VGA monitor or better, CD-ROM drive, IrDA port, 2MB disk space."

The district court accepted the definition of "general purpose computer" that had been agreed by the parties; the court found that a RISC microprocessor does not meet that definition, and that the potential for connecting to a personal computer did not meet the claim limitation. We do not discern error in this finding, for the term "general purpose computer" was added to Hutchins' claims during prosecution in order to distinguish the '685 invention from prior art that showed similar devices with dedicated microprocessor units.

This produced an estoppel against reading the term "general purpose computer" to include a dedicated microprocessor such as a RISC, for the claims had been amended in response to the PTO rejection, thereby estopping recovery of the same subject matter that the claims had been amended to exclude. See Alloc v. Int'l Trade Comm'n, 342 F.3d 1361, 1371-72 (Fed. Cir. 2003) (statements made during prosecution surrendering subject matter binding on later interpretation of the claims); see also Festo, 535 U.S. at 725 (estoppel arises upon amendment to "surrender the particular equivalent in question"); Bayer AG v. Elan Pharm. Research Corp., 212 F.3d 1241, 1252 (Fed. Cir. 2000) (an aspect expressly disavowed during prosecution of the patent cannot be reached under the doctrine of equivalents). The district court's ruling on this aspect is affirmed.

**B**

Mr. Hutchins also argues that the term "general purpose computer" is not "present in each claim" of the '685 patent. That is incorrect, for the term is recited in each independent claim and accordingly is incorporated into every dependent claim. See 35 U.S.C. §112, ¶4 ("A claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers.") Independent claim 1 recites a "general purpose computer system," with dependent claims 2-12. Independent claim 13 recites a "general purpose computer network system," with dependent claims 14-20. Independent claim 21 recites "an article of manufacture adapted for use in a general purpose computer," with dependent claims 22-30. Independent claim 31 recites a "computer program" that is readable by a "general purpose computer," with dependent claims 32-38. Independent claim 39 recites a method for use in CPR with a "general purpose computer," with dependent claims 40-43. No claim is free of this limitation.

**C**

The district court also ruled that the claim term "interactive display input" could not be found by a reasonable jury to be present in the Zoll apparatus. The parties had agreed on the following definition for this term:

> a device for communicating with a computer which allows a user to respond to options presented by the computer by selecting from a menu displayed on a screen.

In the interactive display input described in the '685 patent, rescue personnel select certain "characteristics of the victim relevant to proper performance of CPR techniques." These characteristics include factors such as the consciousness of the victim, whether adult or child or infant, whether the victim is choking, and whether mouth-to-mouth resuscitation is required. The display responds to this information and provides rescue-aiding guidance that can include pictorial and animated instructions.

The Zoll device requires no input from the rescuer, who places electrical contacts as directed by the device; the device then monitors the victim's heart and determines whether CPR or an electric shock is necessary. The district court observed that although the Zoll system analyzes characteristics such as heart rhythm, it does not provide for interactive input by the rescuer. If the Zoll device determines that treatment such as defibrillation is required, the device instructs the rescuer to push the button that administers the electric shock; if CPR is required, the device instructs the rescuer how to perform it and monitors its effectiveness through chest pads placed by the rescuer as instructed; the device verbally instructs the rescuer if the frequency or depth of the CPR compression is inadequate. The district court held that since the Zoll system does not analyze characteristics obtained

2006-1539                                  6

through "interactive display input," a reasonable jury could not find that this claim term is met by use of the Zoll device.

Mr. Hutchins states that the district court, on this summary disposition, did not examine the Zoll system and did not compare the patent claims to the Zoll system. However, the record shows that the systems were explained by both parties at the claim construction hearing and in connection with the motions for summary judgment. The district court was provided with the Zoll manual and user guide, which describe the action of the Zoll system. We agree with the district court that a reasonable jury could not find that the Zoll system employs an interactive display input as described in the '685 patent, for the Zoll rescuer provides no input, but simply follows the instructions issued by the system on monitoring the victim.

The summary judgment of non-infringement of the '685 patent is affirmed.

**Copyright Infringement**

Mr. Hutchins charged Zoll with infringement of two registered copyrights related to his system. For copyright causes we look to the interpretive law of the regional circuit, here the First Circuit. See Atari, Inc. v. JS & A Group, Inc., 747 F.2d 1422, 1438-40 (Fed. Cir. 1984) (*en banc*) (for issues not exclusively assigned to the Federal Circuit, to avoid inconsistency and forum shopping we apply the law of the regional circuit in which the case was tried).

### A

The Copyright Act provides protection against unauthorized copying of computer programs, defined in 17 U.S.C. §101 as "a set of statements or instructions to be used

directly or indirectly in a computer in order to bring about a certain result."  See also 17

U.S.C. §102(b) (copyright protects the mode of expression against copying, but does not

protect the "idea, procedure, process, system, method of operation, concept, principle, or

discovery"); Apple Computer, Inc. v. Franklin Computer Corp., 714 F.2d 1240, 1249 (3d Cir.

1983) ("a computer program, whether in object code or source code, is a 'literary work' and

is protected from unauthorized copying, whether from its object or source code version").

This definition has been applied to protect computer codes and design and text, as well as

the tangible expressions such as the screen display.  However, copyright protection does

not extend to the methods that are performed with program guidance, as discussed by the

First Circuit in Lotus Development Corp. v. Borland International, Inc., 49 F.3d 807, 818

(1st Cir. 1995), aff'd 516 U.S. 233 (1996) ("a text describing how to operate something

would not extend copyright protection to the method of operation itself; other people would

be free to employ that method and to describe it in their own words").

Mr. Hutchins' Copyright No. Txu-213-859 is for the "text of computer program" for his

system.  The district court, applying Lotus v. Borland, ruled that Mr. Hutchins' copyright

does not afford the scope of protection he seeks.  The court explained that copyright does

not protect the technologic process independent of the program that carries it out; that is,

the copyright covers the way the process is described in the written or electronic form of the

computer program, but does not cover the process independent of the copyrighted

program.  The district court held that Mr. Hutchins' copyright for a computer program for

performing CPR in accordance with audio and visual instructions shields the software code

from copying and may cover the specific audio-visual forms and text if original, but it does

2006-1539                                                  8

not cover the standard instructions for performing CPR or their independent placement in electronic form.

Mr. Hutchins states that his program for performing CPR and the Zoll program for performing CPR "perform the same task in the same way, that is, by measuring heart activity and signaling the quantity and timing of CPR compressions to be performed by the rescuer." He argues that his copyright covers the system of logic whereby CPR instructions are provided by computerized display, and that the unique logic contained in software programs is protectable subject matter under 17 U.S.C. §101 ("A 'computer program' is a set of statements or instructions to be used directly or indirectly in a computer in order to bring about a certain result.")

The district court correctly distinguished the specific computer program and its expression, which are the province of copyright law, from the technologic method of treating victims by using CPR and instructing how to use CPR. The court correctly held that Mr. Hutchins' copyright is limited to preventing the copying of the specific computer program that he developed, and does not include coverage of all programs that guide the performance of CPR derived from information in the public domain. See Lotus v. Borland, 49 F.3d at 818 (methods of operation are not copyrightable, although a specific program that implements the method can be protected against copying).

It was not established that Mr. Hutchins' specific computer program, or any original aspects of his display in audio or video, was copied. We affirm the ruling that this copyright is not infringed.

**B**

Mr. Hutchins' Copyright No. TXu-210-208 is for a "Script & Word List" of words and phrases used in his CPR-guidance system. The district court held that the Zoll CPR guidance system did not infringe this copyright.

Copyright of a list or compilation of public information protects against "copying of constituent elements of the work that are original." Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991). The application of this law is summarized in CMM Cable Rep, Inc. v. Ocean Coast Props., 97 F.3d 1504 (1st Cir. 1996):

> It is axiomatic that copyright law denies protection to "fragmentary words and phrases" and to "forms of expression dictated solely at functional considerations" on the grounds that these materials do not exhibit the minimal level of creativity necessary to warrant copyright protection.

Id. at 1519 (citing 1 Nimmer on Copyright (1985 ed.) §2.01[B] at 2-13-18; 37 C.F.R. §202.1(a)).

Mr. Hutchins' charge of infringement relates to Zoll's use of words and phrases that are included on his copyrighted List. Both the Hutchins and the Zoll systems guide the rescuer through the CPR process by way of a series of computer-generated instructions presented in words and phrases. Mr. Hutchins asserts that Zoll's system uses twenty-seven phrases from the copyrighted list. The district court found that Zoll's instructions contain two phrases that are identical to those on Hutchins' list, viz., "call for help" and "check breathing." The court found that three more phrases are similar, viz., Hutchins' "stay calm" (Zoll's "remain calm"); "if no pulse, start CPR" ("if no pulse, continue"); and "give two breaths" ("start with two breaths"). However, the court concluded that these

phrases are entirely functional, that they are not original with Hutchins but are standard CPR instructions, and that they are not subject to copyright.

Copyright does not protect individual words and "fragmentary" phrases when removed from their form of presentation and compilation. Although the compilation of public information may be subject to copyright in the form in which it is presented, the copyright does not bar use by others of the information in the compilation. See Feist, 499 U.S. at 348-49 (no matter how much original authorship is embodied, the facts and ideas are not barred from use by others). The district court found that the words and phrases on Mr. Hutchins' "Script and Word List" are standard CPR instructions devoid of "creative expression that somehow transcend the functional core of the directions," the court quoting National Nonwovens, Inc. v. Consumer Products Enterprises, Inc., 397 F. Supp.2d 245, 256 (D. Mass. 2005).

Mr. Hutchins states that the district court erred in its understanding of "multimedia packages" as embodied in 17 U.S.C. §101, and that the question is not whether the specific instructions for conducting CPR are protectable, but whether the same "digital electronic programming" and "copyrighted digitized phrases" that are used in the Hutchins copyrighted system are also present in the Zoll system. However, the placing of standard words and phrases in digital form does not impart copyright exclusivity against all digitized usages of the words and phrases. We discern no error in the district court's understanding of §101, for the words and phrases on the Hutchins list are standard CPR instructions, and the use by Zoll of the same or similar CPR instructions was not shown to have been copied from any original expression or compilation by Hutchins.

Also weighing against Mr. Hutchins' charge of infringement is the pragmatic doctrine of "merger" of idea and expression, applying the "scenes à faire" principle that originated for literary works. As explained in Atari Games Corp. v. Oman, 888 F.2d 878, 886 (D.C. Cir. 1989), "[t]he term scenes à faire refers to stereotyped expressions, 'incidents, characters or settings which are as a practical matter indispensable, or at least standard, in the treatment of a given topic'" (citations omitted). The standard instructions for performing CPR are indispensable for applying CPR, and remain in the public domain. See John G. Danielson, Inc. v. Winchester-Conant Props., Inc., 322 F.3d 26, 43 (1st Cir. 2003) (when the terms at issue are the only available forms of expression, these expressions are not subject to copyright). Summary judgment of no copyright infringement was appropriately granted.

### The Charges of Fraud

Mr. Hutchins seeks vacatur of the summary judgments on application of Fed. R. Civ. P. 60(b)(3), which provides that "the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for . . . fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party." The First Circuit in Karak v. Bursaw Oil Corp., 288 F.3d 15 (1st Cir. 2002) recites the criteria for such relief:

> First, the movant must demonstrate misconduct -- such as fraud or misrepresentation -- by clear and convincing evidence. Anderson v. Cryovac, Inc., 862 F.2d 910, 923 (1st Cir. 1988). Second, the movant must "show that the misconduct foreclosed full and fair presentation of [his] case." Id.

Id. at 21 (bracket in original). The district court denied Mr. Hutchins' motion; denial of a Rule 60(b) motion is reviewed for abuse of discretion.

2006-1539                                    12

This issue arises because, after discovery was closed and the summary judgment motions had been filed but before their decision, Mr. Hutchins moved to amend his complaint to include a new version of the Zoll system in the charges of infringement.  The district court denied the motion as untimely, stating that discovery would have to be reopened for Zoll to respond adequately, that the delay would result in considerable prejudice to Zoll, and that Mr. Hutchins failed to explain his "undue delay" in filing the motion.  Mr. Hutchins also moved to compel discovery of the new Zoll system, but the court denied this motion on the ground, inter alia, that this new system was not part of the present case.  Mr. Hutchins states that Zoll fraudulently failed to disclose that it had a new version of the accused system and also that its system was the subject of other litigation involving a party with whom Hutchins has a cross-license.

Although Mr. Hutchins now describes his concerns as raising issues of fraud, we conclude that the district court acted within the parameters of "a proper balance between the conflicting principles that litigation must be brought to an end and that justice should be done."  11 C. Wright & A. Miller, Federal Practice and Procedure §2851, p. 227 (2d ed. 1995).  In view of the stage of the litigation, the nature of the subject matter that was assertedly withheld, the district court's familiarity with the events, and the timing of the motion, no abuse of discretion in this action has been shown.[2]

---

2    This court granted Mr. Hutchins' motion to take judicial notice of a separate proceeding before the district court concerning his patent infringement action and the defendants' refusal to accept a summons.  Hutchins v. Zoll Medical Corp., No. 06-1539 (Fed. Cir. Nov. 9, 2006) (Order).  Notice has been taken; this decision is not affected.

<u>AFFIRMED</u>